## SUPREME COURT.

THE PEOPLE OF THE STATE OF NEW YORK agt. THE CENTRAL RAILROAD OF NEW JERSEY.

Where a *foreign corporation*, by its officers, come within this state, it becomes subject to the laws of the state and to the process of the courts; and where

such a corporation, by its officers, is guilty of a wrong, or commits a trespass within the state, there is no rule by which it can escape the consequences of its illegal acts by setting up that it holds its existence under a foreign government.

If there is an improper service of process upon a foreign corporation, the remedy is by *motion.*

In *navigable waters,* where the tide ebbs and flows, the sovereign is the owner of the soil under the water, and of the waters which cover it.

Where such waters form the boundary between two nations, such ownership is vested in each to the portion of the stream adjoining the territory and extending to the center. These rights may be varied by treaty, or by original grants or prior possession.

The articles of agreement or treaty, made and executed between the state of New York and the state of New Jersey in 1833, gives to the state of New York exclusive jurisdiction *over all the waters* of the bay, and all the waters of the Hudson river, and of and *over the lands covered by said waters,* to low water mark on the New Jersey shore, subject to the right of property in the land therein given to New Jersey.

This *jurisdiction* granted to the state of New York, by the state of New Jersey, means the right of exercising authority—of governing and controlling. The right by that grant is made exclusive, both as to the land and the water, up to low water mark on the New Jersey shore. And this jurisdiction and control is exclusive even of New Jersey, except in three particulars : One of title to the land under water ; one of the jurisdiction over wharves, docks and improvements, and one of the fisheries.

This grant of exclusive jurisdiction to the state of New York, with the above exceptions, confers upon the state full power and authority to preserve the river and bay from injury, by strangers having no authority so to act ; and the sole right to exercise authority and control over the water and the land covered by water *against all persons* who have no right to take possession ; and have such right and interest in the waters alone as will enable the people of the state to maintain an action against persons who, without right, seek to interfere with such control or jurisdiction.

Where it appeared that the defendants, a corporation created under the laws of New Jersey, had taken possession of a tract of land under water in New York bay and the Hudson river, over which the people of the state of New York had exclusive jurisdiction, and displaced the water by filling in the same to the extent of eight hundred acres, in a portion of the said bay and river ; that they are now engaged in filling in to a large extent, and will cause serious damage to the harbor of New York ; and that they are doing so without any right or grant from this state :

*Held,* that under such a state of facts, the defendants should be restrained from doing further wrong and damage, until it appear that they have some better right and authority than their mere will and pleasure.

*New York General Term, May,* 1867.

*Before* LEONARD, INGRAHAM *and* SUTHERLAND, *Justices.*

THIS action is brought by the people of the state of New York against the defendants, to prevent encroachments in

the Hudson river, on the westerly side, adjoining the shore of New Jersey.

The complaint avers that the defendants are a body corporate under the laws of New Jersey. It then sets out the agreement or treaty entered into between New York and New Jersey, as to the rights of each to the land and water in the Hudson river, south of Spuyten Duyvil creek; and avers that the defendants, without any permit or authority from the plaintiffs, and without any right, have, for five years last past and upward, been infringing, encroaching upon, and violating the jurisdictional rights of the plaintiffs, and obstructing the navigation of the waters of the Hudson river and the bay, by taking possession of, and appropriating to its own exclusive use, about eight hundred acres of the land and water lying west of the middle of the waters of the bay of New York and Hudson river, over which the plaintiffs have exclusive jurisdiction.

That the defendants have displaced the waters over the land, by erecting docks and piers, and filling in the same, and have connected the same with the main land of New Jersey by a wooden trestle work, about one mile in length.

It further alleges that this part of the Hudson river and the bay, are arms of the sea, in which the tide ebbs and flows; that previous to the filling, the natural depth of the waters was from one to twenty-four feet, and was actually navigable by vessels of the largest size, and would be so in many parts of such filling.

It charges that the filling is made with materials affecting injuriously the sanitary condition of the inhabitants, and that such structures form a common and public nuisance, by narrowing the channel of the river and bay, and obstruct the use of the waters; and that as such nuisance, they ask an injunction against its continuance and extension.

To this complaint the defendants demur upon the grounds:

1. That it appears from the complaint that the court has no jurisdiction of the defendants.

2. That it has no jurisdiction of the subject of the action.

3. That it does not state facts sufficient to constitute a cause of action.

The case was heard at special term, before Mr. Justice POTTER, who gave judgment for the defendants, and the plaintiffs appeal to this court.

JOHN H. MARTINDALE, *Attorney General, for the people.*
LEWIS B. WOODRUFF, *for defendants.*

*By the court,* INGRAHAM, J.  The first ground of objection to the complaint is the want of jurisdiction over the defendants.

The defendants are a foreign corporation. If it were necessary to proceed against them by attachment, to compel their appearance, the objection might have weight. Such is not this case. The defendants have appeared, and, so far as bringing them into the court and within its jurisdiction, that has been done by their voluntary act. Where a foreign corporation, by its officers, come within this state, it becomes subject to the laws of the state, and to the process of the courts ; and where such a corporation, by its officers, is guilty of a wrong, or commits a trespass within the state, I know of no rule by which such a corporation can escape the consequences of its illegal acts, by setting up that it holds its existence under a foreign government.

For the purpose of this question, we must assume that the plaintiffs claim to have a right to the waters in the river where the defendants have taken possession. By the demurrer, they admit having taken such possession, and that they threaten to continue such possession, and to extend it. By the 134th section of the Code, service may be made on the officers of a foreign corporation in this state, or where the cause of action arose therein. What mode of service was adopted does not appear from the complaint, nor is it necessary to state in the complaint the mode by which it is expected to acquire such jurisdiction over the defendants.

We have these facts then, viz : a claim of title to and jurisdiction over the waters, where the defendants have

taken possession, they by their officers then being in possession, and without authority from the plaintiffs, show sufficient facts to give jurisdiction, if the process can be served on the defendants. If there is an improper service, that must be remedied by a motion.

*Second.* The remaining grounds are that the court has no jurisdiction of the subject of the action, and that the facts do not constitute a cause of action.

The decision of these questions depends upon the views which are taken of the acts of the defendants, and, to some extent, renders an examination necessary as to the right of the plaintiffs to maintain any action for acts done in the river west of the center line thereof.

This right, if it exists, is to be found in the agreement or treaty made between the states of New York and New Jersey, in 1833.

There is no doubt that in navigable waters, where the tide ebbs and flows, the sovereign is the owner of the soil under the water, and of the waters which cover it. And where such waters form the boundary between two nations, such ownership is vested in each to the portion of the stream adjoining the territory and extending to the center. These rights may be varied by treaty, or by original grants, or prior possession. I do not deem it necessary to inquire what rights the state of New York possessed to this portion of the river prior to 1833. Whatever those rights were, they were all merged in the provisions of that agreement. By that instrument, the center of the river and bay was adopted as the boundary line between the states of New York and New Jersey, on that part of the river where these encroachments have been made.

By the third article of the agreement, the exclusive right of property in and to the land under water, lying west of the middle of the bay of New York, and west of the middle of that part of Hudson river, was declared to be the property of New Jersey; and by the same article, the state of New Jersey was to have exclusive jurisdiction over the

wharves, docks and improvements, *made and to be made*, on the shore of that state.

If we were to stop here, there would be no difficulty in disposing of this case.

The title to the land under water in the sovereign, includes all right to the waters over the land, and vests in the sovereign the sole right of disposition, and, of course, the right to control the encroachments upon such waters.

The other provisions, however, of this treaty, alter materially the rights of the parties.

The first part of the third article gives to the state of New York exclusive jurisdiction *over all the waters* of the bay, and all the waters of the Hudson river, and of, and *over the lands covered by said waters*, to low water mark on the New Jersey shore, subject to the right of property in the land therein, given to New Jersey. The whole case resolves itself into the inquiry, whether a jurisdiction in the state of New York, exclusive over the waters of the river, and over the land under the water, while the fee of the land has been vested in another party (New Jersey), gives a right of property therein sufficient to maintain an action for an encroachment upon it?

It must be remembered that these grants, on both sides, are between the sovereigns, and are not subject to the ordinary rules applicable to grants made to a subject or citizen.

The sovereign power can grant all it possesses, or may grant a part and retain a part, and a grant of the land to one, and a reservation of the waters to the other, vests in the grantee all the rights which the sovereign originally had in the part granted, or reserves to the grantor all rights in the part reserved, which was not intended to be conveyed.

By the treaty, the right to the soil is transferred to New Jersey, while the exclusive jurisdiction of, and over all the waters of the bay and river, to the low water mark on the New Jersey side thereof, and of and over the land covered by the waters, is granted to New York. The question then arises, what is meant by jurisdiction, and whether such

grant of jurisdiction conveys any right which can be the subject of an action?

This jurisdiction cannot ·be the mere right to serve process, either civil or criminal, for that is provided for by articles six and seven, and it is made co-equal to both the contracting parties, and is not exclusive.

It is the jurisdiction granted by one sovereign power to another, and in that sense it means the right of exercising authority—of governing and controlling. This right is granted by the state of New Jersey to the state of New York ; and the right by that grant is made exclusive, both as to the land and the water, up to low water mark on the New Jersey shore. And this jurisdiction and control is exclusive even of New Jersey, except in three particulars : One of title to the land under water; one of the jurisdiction over wharves, docks and improvements, and one of the fisheries. These three rights are reserved to New Jersey. What are these rights? The right to the soil would prevent the state of New York from granting to another the land under water on the New Jersey shore. Such a grant, if made, must be made by the state that owns the fee.

The right to a jurisdiction over the wharves, &c., naturally follows from the other, and is the reservation of the title and control of the land, after it it is made out of the water, on the shore of the state. The right to the regulation of the fishery is immaterial to the questions before us. These are all the powers reserved to New Jersey. I cannot doubt. but that this grant of exclusive jurisdiction to the state of New York, with the above exceptions, confers upon the state full power and authority to preserve the river and bay from injury, by strangers having no authority so to act. The people of the state of New York have the sole right to exercise authority and control over the water and the land covered by water, against all persons who have no right to take possession. That they may have such an interest in the waters alone, as would enable them to maintain an action against persons who, without right, thus seek to interfere with that control or jurisdiction, I have no doubt. It is not

at all an uncommon thing for persons owning the bed of a river to convey to others a right to the water, and such a right may be protected and preserved by action even against the grantee. In *People* agt. *Canal Appraisers* (33 *N. Y.* 461), Chief Justice DAVIES discusses, at great length and with great ability, the rights of the state to navigable waters; and, although not deciding any of the questions raised in this case, yet he shows there that both in the water and in the land under the water, the sovereign power possesses rights and estates which may be preserved and protected.·

If this were an action against the state of New Jersey, very different questions would arise. It was in this view that the learned justice tried the case at the special term, and his decision is based more upon the rights of New Jersey to build wharves and piers on her shores, than upon the real merits of the case, as presented on this demurrer. I am free to admit that the article which gives to New Jersey the exclusive jurisdiction over wharves, docks and improvements, made and to be made, upon the shore of that state, would, if New Jersey was the defendant, raise a question of much importance and difficulty. That such a clause might be construed as giving to New Jersey the right to build piers and wharves below low water, is apparent; for the state of New York never claimed to own above low water mark, and her rights are only recognized to that extent in this treaty; and the term "shore," must have a more extended construction than between high and low water mark, because the same word is afterwards used as places where vessels might get aground while navigating the river.

But that case is not before us on this demurrer.

By this demurrer, the defendants admit that the plaintiffs have the sole and exclusivs jurisdiction over the bay and waters of the Hudson river, and of the land covered with water, to low water mark on the New Jersey shore, as stated in the agreement between the states of New York and New Jersey; that these waters are arms of the sea, in which individuals can have no right or title; that the defendants have taken possession of a tract of land under water in said bay

People agt. The Central Railroad of New Jersey.

and river, and displaced the water, by filling in the same to the extent of eight hundred acres, in a portion of the said bay and river over which the plaintiffs have exclusive jurisdiction; that the defendants are engaged in filling in to a large extent, and will cause serious damage to the harbor of New York; and that said defendants are so doing without any right, and without any grant or permission of the plaintiffs. By their admissions, the defendants appear as simple wrong-doers and trespassers, committing a serious injury to the rights and property of the plaintiffs, which they seek to restrain. I see no good reason why, under such a state of facts, the defendants should not be restrained from doing further wrong and damage, until it appear that they have some better right and authority than there mere will and pleasure. To sustain this judgment, would be an invitation to anybody, at their pleasure, to sink blocks and piers in this portion of the river, regardless of the rights of New York.

Nor can it be said that it does not appear that this filling is not between high and low water mark, and, therefore, not within the jurisdiction of the plaintiffs, because it is averred that this filled-in ground has been connected with the main shore of New Jersey by a wooden trestle work about one mile in length.

Even if it be conceded, that after this land is made by the filling in, it becomes subject to the jurisdiction of New Jersey, still that does not relieve the defendants, because it is averred that they are engaged in the work, and intend to extend their filling to a much larger extent; and as to that, I have no doubt of the plaintiffs' right to interfere, until the defendants show some better authority than now appears in these papers.

I forbear to express any opinion upon the right claimed by New Jersey, to build piers and wharves, and make improvements on her shore. When the defendants, by an answer, claim that they have the authority of the state of New Jersey for their acts, that question will properly arise. It cannot be available on this demurrer.

Something was said about the extent of the county of New York, in connection with this action. The boundaries of the state extend to low water mark on the New Jersey shore. (1 *R. S. p.* 54.) That statute has not been altered. The county of New York, on its western boundary, extends to the west bounds of the state. (1 *R. S. 5th ed. p.* 3.) This description covers the disputed territory, so far as the boundaries are designated by any law of the state, so that the action is properly brought in this district.

The conclusion to which I have arrived is, that the demurrer is not well taken ; that the state of New York has such a right, title and interest in the waters of the bay and Hudson river, as will enable them to maintain this action, and that the defendants are mere trespassers, and show no defense thereto.

The judgment should be reversed, and judgment ordered for plaintiffs on the demurrer, with leave to the defendants to answer on payment of costs.